Here are the next, uh, case on the, uh, calendar, uh, Severino. Yes. May it please the court, my name is Walter Mack. I represent the defendant appellant. My client is currently in state custody in Connecticut, serving, he was here when he was sentenced on a writ from Connecticut pursuant to his 2015 arrest, which is the subject of the record. He was returned there and is serving what I believe will be considered state time. The issue on this appeal is whether or not the district court can depart below a mandatory minimum without the imprimatur of the United States of the prosecutor. Our position is that if you look to the guidelines in themselves, they do not impose a obligation that the United States is the only party who can unleash the power of the 5k 2.0 departures. Can you help us, help me anyway, by pointing to a statute or a decision that says that provisions of the guidelines can override statutory minimum sentences? What I would, my argument on that, Your Honor, is that Title 28, Section 994 gives a discretion to the Sentencing Commission to, in fact, enact and provide instruction and or guidance to the district court in terms of its sentencing decisions. I would argue, and I will argue here today, that the provisions that are statutory, 3553E and 3553F, which the government takes the position that only with the government's approval may the district court in sentencing, I suggest that those as such, as they have developed, in the instance Booker, are unconstitutional, are in violation of either due process or right to a jury trial. And I can explain. That's the central argument you're raising, right? It is the central argument I'm raising. You can't identify a district court judge who has ever gone below a statutory minimum on his own or her own. I think there's some uncertainty on some of the cases. And some of those cases can be read. But I cannot identify an opinion where it is clear that the mandatory minimum is being downward departed from. What is it in Section 994, what does Section 994 say that you argue authorizes the commission to authorize judges to go below a mandatory minimum? My first argument is that sub N of 994 does not require. Wait a second. Sub N? Yes. And I may have to turn to myself, Your Honor. OK. The commission shall assure that the guideline would reflect general appropriateness. What am I looking for here? Let me find it. It's 28 S N of 28 United States Code, Section 994. And again, this is a matter of some comment by people far wiser than me who were writing treatises indicating that there was no obligation in the enabling statute for the sentencing commission that required that there be an initial or be an application or an approval by the government in order to permit the district court to sentence. And it is clear that it says that the guidelines reflect the general appropriateness. But there is nothing there or in the legislative history that indicates that at that time, there was a request for substantial assistance, was, in fact, had to be entirely within the control of the prosecutor. Was that in the pre-agreement? That is the issue. I know I am facing Melendez, but excuse me, I'm talking perhaps louder than I need to, that the issue has been definitively determined. That is a 96 case. The commission has had many opportunities, as has the court, in assessing the constitutionality and, in fact, has evolved a number of practices which are now current. And what I am arguing here is we're asking that under exceptional circumstances, which I never had an opportunity to demonstrate because Judge Torres, and this is the classic case of why it is the subject of so much criticism by district court judges in this courthouse and elsewhere, that the sentencing discretion under 3553A to look at the characteristics, et cetera, of a defendant, that notwithstanding their view, Judge Torres came down after the sentence and spoke directly to the family of my client and said that the reason she did not give, I mean, I'm interpreting this, but I was there, she went specifically to the family to say that she felt that she had to give the mandatory minimum because of the statute which the government was citing. And I'm suggesting... Oh, so the, um, the, um... Did you make the argument in the district court, you made the argument in the district court that the court has authority to depart below a mandatory minimum, notwithstanding the absence of a letter from the government? Yes, I did, Your Honor. And the judge said, the judge ruled that she did not... Ruled against me and said specifically that she did not feel she had the authority or the power to do so. I indicated that there were a lot of other grounds. I think there is direct authority under 5G3, perhaps a little bit slow of my remembering, that where, in fact, a state sentence, which is now my client is facing, which will not even be carried or considered until the BOP computes the sentence, will actually have the impact, if it's larger, so the mandatory minimum of such could actually be exceeded by what Connecticut's ruling in the state. So there is a... Could you point to where in the record you made that argument? Well, I would say it's obviously in the appellate record, one way or the other, but at the time I... Yeah, now I understand you're making it on appeal, but I'm saying that... I'm asking, in the district court... In the district court, yes. Where did you make that argument? I did not make it specifically other than this way, and that was by saying I felt, and I think there is plenty of authority, that I should be entitled to demonstrate what is happening in Connecticut, what he did when he was originally arrested. I had myself personal conversations with state law enforcement people early on, and that I was asking the court to issue an order directing that whatever he did for other authorities, whatever his status was in Connecticut, that I have the benefit and opportunity to observe those and be able to argue them. And that, in fact, to the... Could you, maybe when you sit down, could you just point us to where, with the pages where you made that argument, where you made the argument specifically that the court should have imposed a term below the statutory minimum? Did not make that argument, Your Honor. I made the argument that I did not have sufficient information, and that was in writing clearly, asking for statements from Connecticut authorities, asking for what information Connecticut could provide, and I would not be able to make. I actually did not know what Connecticut was doing, and I felt since he had cooperated with local authorities in Waterbury, Torrington, various other places, I knew only from him that I needed to have that information to be able to completely brief the issue and try to convince Judge Torres that there were such exceptional circumstances that would justify a departure as the guidelines demonstrate. There's nothing in the guidelines which indicates that those departures under 5K2 are stopped by mandatory minimums, and I do point out the very form approved where the judicial conference and the guidelines could very easily say, you cannot depart below a mandatory minimum. The form itself, although it is not for public use, specifically provides for the district court making factual findings, permitting it to go below the mandatory minimum. So, and in this particular case, the government does not make the distinction between 3553E and 5K1.1, whereas in Melendez, there was a clear binary system in which separated those, and in the government in Melendez was not asking for a reduction below, that case is an old, I believe, 96 case, and I say it is inapposite, and I am arguing the judge felt constrained, and I would be glad to argue the constitutional reasons why the current regimen importing the government's having the only authority to permit a district court judge to depart below a mandatory minimum, coupled with a cooperation agreement that... It's not really the government's authority to do it, it's the government's agreement to file either 5K1 or 35538E, right? So you're saying they have the power, it's not really the authority, right? I would agree, Judge Barron. Okay. Thank you. Now, you say that the, it is, you agree, do you not, that the government, a letter from the government is required to depart to, no, I'm sorry, I retract that. Your argument is that there is no basis in law for a court to take the position that it may not go below a mandatory minimum without a 5K1 letter. Or that is, I think I got that correct. I am arguing that insofar as the United States government can talk about substantial assistance given to the United States government, the law as such in the statute is that the United States, the prosecutor, is the only one that can enable that under 5K1.1. I do not agree that that's the end of the issue as to whether or not the district court can depart below a mandatory minimum. And that's our position. And I'd be glad to argue the constitutional point of what the reality is, pointed out by far smarter individuals than I, as how the, one, how a defendant does not have an opportunity to realistically plea bargain given the terms and issues that are available to him when he's facing a mandatory minimum. The only way he can get below them is because the prosecutor is willing to confer that right. And I'm saying that is something that I, at least, and I'm glad to argue because I've been through that many times, and I think many district court judges are in fact in that situation have spoken out, including this judge, Judge Torres, when she, after she sentenced this person. They don't have the right arbitrarily not to submit a 5K1 or 3E. They have to have some rationale. And that is an issue. One of the issues here is that I did not have the opportunity. I do not accuse anyone of bad faith or arbitrary behavior without pretty substantial evidence to do so. And I have great respect for the prosecutors who have worked on this case. But what I'm suggesting is it's not only arbitrary. It also has to be reasonable, especially if the court's interpretation is we need a governmental proposal to even permit us to go below the mandatory minimum. I don't know whether I saved any rebuttal time or not, but I give this. Thank you. May it please the court. My name is Jessica Lonergan. I represent the United States, and I represented the United States below. This is a simple case. It's controlled by, it is decided by controlling Supreme Court precedent, Melendez v. United States, and by the plain text of section 3553E, which reads, upon motion of the government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance. As the Supreme Court made clear in Melendez, this is actually not a unitary system. In a hypothetical case in which there was a mandatory minimum sentence facing a cooperator and which the government filed a motion pursuant solely to section 5K1.1 of the guidelines, in that hypothetical scenario, the district court would still not have the authority to go below the mandatory minimum imposed by statute. What that 5K1.1 letter would allow the district court to do, what the government would be recommending, would be a departure from the guidelines. This is separate from a mandatory minimum sentence imposed by statute. As the plain text of the statute makes abundantly clear, the only way in a cooperator scenario that a district court can go below a mandatory minimum imposed by statute is if the government files a motion not solely pursuant to 5K1.1, but also pursuant to Title 18, United States Code Section 3553E. Here, of course, the government filed a motion pursuant to neither because the government and the government acted both in good faith and reasonably in making this decision. There is, although defense counsel has repeatedly, both below and here, demanded that the government produce discovery, there's no need for discovery in this case. The basic facts here are undisputed. In fact, the government agreed as to many of the facts of the defendant's assistance here and put them forth in a letter, in a sentencing submission to Judge Torres. It was because of those facts that the government took the unusual step of recommending a below guideline sentence for a cooperator who had violated his cooperation agreement in multiple ways, including by committing new crimes while on bail as a signed up cooperator. In addition, it is not disputed that the defendant committed additional crimes in Connecticut while on bail. Those crimes were serious. They involved trafficking in substantial quantities of cocaine. Even more serious, in a way,  is that the government ridded the defendant from state custody in Connecticut to the Southern District of New York to give him an opportunity to redeem himself. The government posed questions to him about what had happened in Connecticut. At that time, the government asked the defendant how many times he had engaged in unapproved narcotics transactions. The defendant said once. The government asked him again and the defendant repeated that answer. The government had information, of course, set forth in the record that the defendant had engaged in multiple unauthorized cocaine transactions while on bail. When you say you wanted to give him a chance to redeem himself, how could he have redeemed himself in your eyes given the information that you had? Yes, Your Honor. It is our position that had the defendant made a grave error in judgment by committing additional crimes, had, however, the defendant come in and been completely forthcoming and honest with the government about the multiple times in which he dealt cocaine, it would have been a question to the government at that case, at that point, about what was the appropriate outcome. One outcome at that point would have been to replead the defendant to another charging instrument which either expanded the timeframe of the conspiracy or added additional charges to take into account the crimes that he committed while on bail. That would have been a potential outcome. However- How does that redeem him? I mean, when you say someone has a chance to redeem himself, that suggests that the government would look favorably upon his being forthcoming, and it doesn't seem that that's what you're saying. I'm trying to understand what it means. You used the word redeem himself. I don't understand what you're saying. Yes, Your Honor, to sign up a cooperating witness, one of the most critical things, as is set forth in the cooperation agreement, is that the defendant be forthcoming and honest about his own conduct, conduct of others, and to answer any questions truthfully that the government poses to him. So in this situation, we had- Just to shorten the discussion, is it the case, it's my experience, is it the case that the lie is worse than the crime? That's correct, Your Honor. And so here we were not just faced with the crime, but then also the lie about it. And because one of the things that is required by the cooperation agreement is that the defendant be available as a witness, we felt at that time that because we no longer had faith that the defendant was telling us the truth. And so in that way, we could not, in good faith, put him on the witness stand as a witness for the government because we did not believe that he was being forthcoming. Are there any circumstances, and if so, what are the circumstances in which a court is permitted by law to depart below a mandatory minimum without a cooperation letter, without a motion by the government in favor of such departure below a mandatory minimum? Well, I think in the substantial assistance context- Substantial assistance context. The government is aware of no case law allowing a court- No, I'm not asking you about case law, I'm asking you about what is the law. Does the law allow any circumstances in which a court is permitted to go below a statutory mandatory minimum by reason of cooperation without a motion of the government urging that departure? No, Your Honor, as the text of 3553E makes clear. And that would be true, you're saying, even in the event that the government's withholding of the letter is in bad faith? No, Your Honor, I think in that context- I'm asking you, what are the circumstances? My apologies, I misunderstood the court's question. Yes, I believe that if the government acted in bad faith, and I think the case law makes clear what bad faith is, so that would be acting for an unconstitutional motive such as the defendant's race or national origin or gender. It would also be if when there is a cooperation agreement and the government fails to abide by the terms of the cooperation agreement, or if the government's decision not to file the 5K1.1 and 3553E motion was not rationally related to- What establishes that exception from the requirement of a government motion? So Wade v. United States establishes that a court, a district court can review the government's refusal to move if that refusal is not rationally related to any legitimate government end. I'm sorry, what I'm asking you is, where is the authorization for the court to do that, to be found in the law? To review? I believe that that would be constitutional because there is the constitutional requirements that the government, of course, does not discriminate or that the government acts, it does not act arbitrarily or in bad faith. Those, I think, would all come under the auspices of- There's no statute or court decision that authorizes that. You're just saying that you think the Constitution, that it follows from the Constitution. Your Honor, I would argue that Wade, while not authorizing necessarily a departure below the mandatory minimum in the first instance, would allow a court to inquire further if there was some evidence in the record that the government had acted either unconstitutionally or in bad faith or that the refusal was not related to a legitimate government end. But here, there's- What about if the government's reason for not giving the motion is an unreasonable one, as, for example, one determined by the court to be unreasonable, as, for example, might be the case if somebody undertakes to cooperate and he cooperates in one case and he cooperates in a second case and cooperates in a third case, and then the government says, well, this is going really well. We now want you to cooperate against John Gotti. And the cooperator says, I just can't do that. I can't put my children, my family at risk of virtually certain death. I can't do it. And although the defendant, the cooperating defendant has rendered extremely fine, unimpeachable cooperation in prior cases, the government demands go on and on and on in a manner that the court regards as unreasonable. Can the court depart in those circumstances because of the unreasonableness of the government's refusal to give the letter because he brought his cooperation to a stop? Well, I would answer that question in two parts, Your Honor. The first part is that the language of the cooperation agreement, and as we explained to defendants who are attempting- I'm presupposing that the cooperation agreement on its face requires the defendant to cooperate as much as the government asks. Yes, Your Honor, so that's correct. So then I would say actually that the case law does not really use the term reasonable. That is a term that I think the defense counsel has interjected here. The case law looks first at whether the government's refusal to move was unconstitutional. That's under Wade. Then there's cases from this court that recommend a more searching review if the government was operating under the auspices of a cooperation agreement. And in that circumstance, the review is still limited. And the review is limited to one, whether the government has abided by the terms of its cooperation agreement. And secondly, as I have maybe botched the quote before, but the quote from United States v. Scarpa is, if the prosecutor's refusal to move was not rationally related to any legitimate government end. And so that case law does not inject the term reasonable. It looks at, again, a rational, a legitimate government end. And I think that there would be an argument in the scenario that Your Honor has posed that defendants don't get to pick and choose against whom they cooperate. Clearly, defendant safety, cooperating witnesses' safety is of paramount importance to the government. It's why the cooperation agreements often provide that the government will, upon defense request, recommend to the United States Marshal Service that the defendant be entered into the Witness Protection Program. We can't promise that because it's not under the control of the United States Attorney's Office. But the government does take steps to protect its cooperating witnesses. If it didn't, it would honestly be bad for business. But I do think that defendants being allowed to pick and choose against whom they cooperated, that would be, that's not how cooperation can work. It would set bad incentives. My hypothetical presupposed that the defendant had cooperated successively in a manner that arguably earned his entitlement to the 5K1 letter. But then, perhaps a new prosecutor came in who wanted to go further and further. I was not saying pick and choose. I'm saying that after one has earned what the court might, in this hypothetical circumstance, deem to have been excellent performance of the cooperation agreement, but you just can't go on forever. And you say, if I understand you correctly, that if the cooperation agreement is sufficiently clear that the government is entitled to ask for as much cooperation as it wants entirely in its discretion, then the court has no basis for, no lawful basis to depart on the grounds that he has performed adequately and it is unreasonable for the government to withhold the letter because of refusal to go still further? Yes, Your Honor, because there's a provision in the cooperation agreement that says the defendant must truthfully answer questions posed to the defendant about the defendant's own conduct and anyone else that the government asks about. I will say that, of course, the government attempts to act reasonably and fairly with any cooperating witness, looks at the entire circumstances of the cooperating witness's cooperation of the underlying conduct. A part of the consideration is, what did we know about the defendant at the time he was arrested? What is the likely sentence the defendant would have served given what we knew at the time? What is a likely sentence, although we, of course, do not determine the sentence, what is a likely sentence for this cooperating witness given the extent of this witness's conduct and cooperation? And we endeavor to ensure that a cooperating witness is not required to remain incarcerated longer than what would be a reasonable sentence in those circumstances. But forgive me, I'm curious about another thing. In this particular defendant's case, this defendant is so far from the hypothetical defendant that I'm talking about. And is there a basis in the record for a finding that the judge might have contemplated going below the mandatory minimum for this defendant if the judge did not consider herself bound by the government's failure to provide the 5K1 letter? Your Honor, I was not privy to the conversation which defense counsel. Nothing in the record, I mean. I do not believe so, Your Honor. It is true that Judge Torres made clear that she, in the government's opinion, correctly interpreted binding case law and correctly held that she was bound by the mandatory minimum sentence here. I do not recall any comments that Judge Torres made on the record that she might have imposed a lower sentence had the law been different at the time. If the court has no further questions, I know I'm well over time. Thank you. Thank you. Did you address Judge LaValle's question? Is there anything in the record? There's a great deal in the record. Where Judge Torres specifically says. Yes, let me find that, Your Honor. It's actually the very end.  A-190, starting at line 14. What does she say? Well, in lines 19 through 21, in making my decision, this does not reflect whether I believe those laws are fair or just, but it is my sworn duty to carry out those laws, and that is what I have done today. Now, which laws are those? Those are the laws that were argued by the government that only they could release her. I think the question was specifically, did she indicate, I would go below this minimum if I could, or if it worked, or whatever. I would suggest, I mean, she's not saying 3553E prevents me, but the interpretation, I was there when she did it. She came down from the bank. No, no, but is that it in the record? That is it in the record. Got it. There was a lot of argument, but it was clear. Why would this language, it seems to me, this language looking at just the page you've referred to, my inclination would be to construe that as meaning that the judge doesn't consider mandatory minimums to be fair or just laws, which is a view taken by a very large percentage, maybe 99.9% of the bench, not as suggesting that the judge selects this defendant as somebody for whom the judge would find it appropriate. Your Honor, we had spent a great deal of time, although not always with the family, that day, arguing this very point that basically our position was there were many other bases that permitted under the guidelines for the court to depart. There's nothing in the guidelines which is consistent with the government's position here. They have to rely on 3553E and saying that that's it. We're the ones who control any departure below. 3553 contains starts with the words like 5K1 upon motion of the government? It does, Your Honor. It does. There's no question. I'm saying, however, and my argument there is that the effect of that, the effect of the cooperation agreements that I deal with and every defense lawyer in this district or in this circuit deals with, are so onerous whatsoever, I can tell you from personal experience, not only with this client, it was different. And there are different facts with him because he was cooperating in Connecticut before I ever saw him for two weeks. And there were arguments that basically could be made under 5K2.0 that would permit departure under the guidelines. And what I'm suggesting is that when you couple what the government's position has just been stated, it's us or nowhere, with a cooperation agreement that basically is so onerous in which the defense has really no bargaining power of any kind that that puts the executive branch entirely in control of the pleading process when you're representing a defendant in this courthouse. His agreement probably had a condition in it that put him on notice that if he did not comply with the terms of his cooperation agreement that the government would not be required to submit a 5K1 or a 3553E and he still would not be able to withdraw his guilty plea. Absolutely, Your Honor. It's in every cooperation agreement I've seen, and I've seen a lot of cooperators, and I can tell you that in an earlier life I probably had as many cooperators. There's no cooperator, there's no cooperator who starts, who doesn't have some problem along the way that needs to be done. I'm not undermining you. This gentleman, my client, made a terrible error, and I'm not going to try to code it. I will tell you that were I to get the records, his position was, and it is stated below, that he was told by the DEA individual that he was not going to get a 5K1.1 unless he did something else, and he acted in a way that he believed was authorized. Whether that's true or not, I can't make that showing. All I'm saying, there was a basis at least to analyze what, in fact, were the records. What were the state records? What were the records that indicate his cooperation? Recognize this defendant was permitted twice. He was doing such a great job and working so hard, he was permitted twice to travel to Chicago with the government's permission and the court's permission. And, in fact, the government said that he did provide substantial assistance until July, I believe it is, of 2015. I'm not trying to sugarcoat this situation. What I'm saying is I never had an opportunity because the judge accepted below that no matter what happened, unless it's 3553E or 5K1.1, I'm out of luck. It's going to be 12 years, and that's it. Too bad. Thank you. Thank you, Your Honor. Thank you, both, for your arguments. The court will reserve decision. The final case on the calendar, United States v. Larrabour's Mart, is on submission. The clerk will adjourn court. Court is adjourned.